GUNHILD K. FJONE v. HANS O. FJONE.

Opinion filed May 9, 1907.

**Contracts — Undue Influence — Relations of Trust and Confidence.**

1. Courts of equity will carefully scrutinize contracts between persons occupying relations of trust and confidence, and if it appears that a contract was entered into through the exercise of undue influence practiced by one party upon the other, or if it is grossly unfair or inequitable, the courts will not hesitate to cancel the same.

**Same — Validity of Deed — Burden of Proof.**

2. Where an aged woman executed and delivered to her son a deed to all her real property, and it appears from the relation existing between them that the mother was wholly dependent upon her son and reposed implicit trust and confidence in him in their dealings, the burden is upon the son, in an action to cancel such deed, to show that the same was not obtained through undue influence and that it was in all respects fair and equitable.

Appeal from District Court, Ramsey County; *Cowan,* J.

Action by Gunhild K. Fjone against Hans O. Fjone. From a judgment in favor of plaintiff, defendant appeals.

Reversed and remanded, with direction to dismiss the action.

*E. Smith-Peterson,* for appellant.

Weakness of mind not presumed from age alone. In re Disbrow's Estate, 24 N. W. 624; Sheperdson v. Potter, 18 N. W. 575.

Undue influence must amount to force or coercion. Layman v. Conroy, 60 Md. 286; Latham v. Udell, 38 Mich. 238.

Liberty to obey the voice of justice, dictates of kinship and benevolence, claims of kindred in disposing of property, must be recognized. Wallace v. Harris, 32 Wis. 297; Dailey v. Kastell, 14 N. W. 635; Marking v. Marking, 82 N. W. 133; Smith v. Smith, 19 N. W. 47; Giles v. Hodge, 43 N. W. 163; Montague v. Allen, 78 Va. 592; Post v. Mason, 91 N. Y. 539; Carter v. Dickson, 69 Ga. 82; Creswell v. Welchman, 30 Pac. 553.

Fraud and undue influence must be directly connected with the execution of the instrument. Guild v. Hull, 20 N. E. 665; Shea v. Murphy, 45 N. E. 1021; Pittenger v. Pittenger, 70 N. E. 699.

*J. G. Johnson,* for respondent.

Where a person rendering service is a member of the family of the person served, as a child, relative or visitor, such service is presumed gratuitous, unless express contract is shown. Cowan v. Musgrave, 35 N. W. 496; Moyer's Appeal, 3 Atl. 811; Wall's Appeal, 5 Atl. 220; Sawyer v. Herbrand, 3 Atl. 529; Leary v. Leary, 32 N. W. 623; Dodson v. McAdams, 2 S. E. 453; Allen v. Allen, 27 N. W. 702.

Equity will closely scrutinize contracts between persons in confidential relations, and set them aside in the absence of a showing of good faith. Brummond v. Krause, 8 N. D. 573, 80 N. W. 686; Kerr on Fraud and Mistake, 150, 152; Leighton v. Orr, 44 Iowa 679; Tucke v. Bucholz, 43 Iowa 415; Gardner v. Lightfoot, 32 N. W. 510; Sprague v. Hall, 17 N. W. 743; Thorn v. Thorn, 16 N. W. 324; Cole v. Getzinger, 71 N. W. 75; Davis v. Dean, 26 N. W. 737.

Fisk, J. The plaintiff, a person about 82 years of age, brought this action against her son in the district court of Ramsey county to annul and cancel a certain deed of conveyance executed by her to defendant on August 20, 1903, conveying 160 acres of land in said county to the defendant. She bases her right to the relief asked upon the ground that she was induced to execute such conveyance through undue influence and fraud practiced upon her by the defendant, and she also alleges a partial failure of consideration. The trial court found for the plaintiff, awarding her the relief prayed for, and the defendant has brought the case to this court for trial de novo.

The record is very voluminous, but we think a brief statement of facts will be sufficient for a proper understanding of the questions involved. The parties were born in Norway; the defendant coming to the United States in 1880, and the plaintiff in 1896. The plaintiff is unfamiliar with the English language and has had no business experience, while the defendant can speak English quite fluently and has had considerable business dealings. For a period of about seven years after establishing her residence in this country, plaintiff made her home with the defendant, the latter supporting and caring for her, and attending to any business matters in which she was interested; and we think it fair to conclude from the record that during all this time she reposed implicit confidence in and was dependent upon her said son to a great extent, if not entirely, as to all matters pertaining to her welfare. The real property in controversy was the government homestead of the plaintiff; she having, at the solicitation

of her son, filed upon the same in 1897 under the homestead laws of the United States, and he at the same time filing upon an adjoining quarter section.   He built a house upon the line between the two quarters, in which they both resided until August, 1903.   Defendant, as disclosed by the undisputed evidence, paid all the expenses incident to the filing and final proof upon the land in controversy, and made permanent improvements upon said land, aggregating in value $650.   He also defrayed a portion of her expenses in coming from Norway to this country, and during the time she resided with her son (about seven years) he furnished her with all the necessaries of life without compensation, other than the voluntary assistance rendered by her in and about the home, during all of which time she was treated by him with filial affection, and she frequently stated to others, as well as to her son, that in appreciation of what he had done for her she intended that this land should ultimately go to him, as he had helped her to get the land, and had done so much more for her than her other children had done.   It is stipulated that at the date of the deed in question the property, exclusive of improvements, was reasonably worth $1,600, and by the terms of the contract he was to pay her for the land the sum of $800, represented by eight promissory notes of $100 each, one payable each year until fully paid, with interest, secured by a mortgage upon said real property. There was a great mass of testimony introduced at the trial in the court below bearing upon the issues as to fraud, undue influence, and failure of consideration; but it would serve no useful purpose to review the same at length in this opinion.

It is sufficient to say that, after a careful consideration of the testimony, we are convinced that the plaintiff has failed to establish facts which would warrant a court of equity in awarding to her the relief which she asks, and we are constrained to believe from the testimony in the case, that, had it not been for the intervention of some of her other children, this action would never have been commenced.   It was not until she had met her other sons, and they had caused her to believe that defendant had cheated her in this transaction, that she became dissatisfied and formed the intention of rescinding the contract.   The record will be searched in vain for any evidence of actual fraud practiced upon her by defendant in procuring the deed, and while plaintiff may have been influenced to some extent by the defendant in entering into the contract of sale and in executing the deed, we do not think it can properly be held to be such

undue influence as would warrant a court in disturbing the transaction. It is, of course, well settled that courts of equity will carefully scrutinize transactions between persons occupying relations of trust and confidence, and will not hesitate to reach out their strong arm in protection of the weaker against the stronger mind, where an inequitable or unconscionable bargain has been obtained through improper or undue influence; but it is equally well settled that the influence, in order to vitiate a contract, must amount to force or coercion so as to destroy free agency. As stated in Davis v. Culver, 13 How. Prac. (N. Y.) 62: "The influence which the law not only refuses to recognize, but repudiates, is undue influence, denominated 'undue' because is it unrighteous, illegal, and designed to perpetrate a wrong. The undue influence exerted to procure the execution of a deed or bequest, or devise by will, must amount to fraud or coercion. The grantor must be overreached and deceived by some false representation or stratagem, or by coercion, physical or moral." The rule is clearly and tersely stated by Mr. Andrews, in his valuable treatise on American Law, as follows: "One party may occupy a position or sustain such a relation to the other as to be able without any actual physical force to so far control the will of the others as to really constitute an overmastery of the mind and render him unable to resist his importunities. The law recognizes that to a certain extent, in the relations of husband and wife, parent and child, attorney and client, nurse with the sick or one in charge of an imbecile the former in each instance has a measurable power over the mind of the latter, and it requires that no undue or excessive importunity shall be made the means of securing a beneficial contract or conveyance; and the excessive exercise of this natural control is called 'undue influence.' Contracts entered into because of it do not bind. * * * Not every pleading, urging, or cajoling will amount to undue influence. The act is so nearly akin to duress that it differs only in the quality of the force. The importunity must amount to coercion, destroying the freedom of mind, so that the act is performed rather from motive of fear or helplessness. To avoid a will or deed it must be shown that the free agency of the party executing the instrument was destroyed. Mere appeals to the affections, or the impulse of gratitude, however importunate, are not sufficient." In Wallace v. Harris, 32 Mich. 380, it is said: "The line between due and undue influence, when drawn, must be with full recognition of the liberties due every true owner to obey

the voice of justice, the dictates of friendship, of gratitude, and of benevolence, as well as the claims of kindred, and, when not hindered by personal incapacity or particular regulations, to dispose of his own property according to his own free choice."        .

Tested by these rules, we unhesitatingly conclude that the evidence in the case at bar is wholly insufficient to warrant a finding of undue influence practiced upon plaintiff by defendant in procuring the execution and delivery of the deed in question. Furthermore, we are convinced that the contract between these parties, instead of being grossly unfair or inequitable, was, on the contrary, just and reasonable, in view of the law and facts. The proof shows that the reasonable value of plaintiff's board during the time she made her home with the defendant was $2 per week, and the proof also shows that the defendant furnished to her during said time necessary medical attendance and other necessaries of life; and, as above stated, he made permanent improvements upon the land to the extent of $650 in value, and while these were voluntarily furnished, and these improvements voluntarily made by defendant, and, on account of · the relations of the parties, he could not legally recover therefor, they were, we think, proper items to be considered by the plaintiff in fixing a consideration for the sale of the land to the defendant. There was a moral, as distinguished from a legal obligation, and, when these matters are considered, it cannot be said that the consideration for this deed was inadequate, or that the contract was an unfair or unconscionable one.

Counsel for respondent cite and rely upon Brummond v. Krause, 8 N. D. 573, 80 N. W. 686; and, while we fully indorse what was said by the court in that case, we do not think that the facts in the case at bar are analogous to the facts in said case. It was there held that the relation of trust and confidence existed between the grantors and the grantee, being parents and child, and the contract between such persons will be set aside, where the stronger mind has induced it to be made, unless the bona fides of the transaction is shown. It is conceded by counsel for appellant that this rule is applicable to the case at bar, and hence that the burden is upon the defendant to show the bona fides of the transaction, and that he took no undue advantage of his mother in procuring the deed in question; but he contends, and we think his contention is correct, that he has successfully shown the absolute fairness of the contract, and that he was not guilty of any fraud or undue influence in the

transaction. In Brummond v. Krause, supra, the only consideration to support the deed of property worth $1,200 was the unsecured promise of the daughter and son for the payment each year of $25 cash, and the delivery of 25 bushels of potatoes, 500 pounds of flour, 3 cords of wood, and 1 hog during the life of the grantors, who were very old people, and with a proviso that even this small pittance was to be cut in two at the death of either of the grantors. The decision in that case was placed upon the ground of gross inadequacy of consideration, and also upon the ground of actual fraud in procuring the signatures to the deed. As we have above stated, no such state of facts is disclosed by the record in the case at bar.

In this case there are equities in defendant's favor which should not be overlooked. As stated before, defendant defrayed a portion of plaintiff's expenses in immigrating to this country. He made it possible for her to acquire title to this property from the government, paying all expenses in connection therewith. He supported her and furnished her with the necessaries of life during a period of nearly seven years; her other children contributing practically nothing thereto. He has made permanent improvements upon the land at his own expense, aggregating in value $650; and, if the decision of the trial court is sustained, he in all probability will never receive anything therefor. In view of these facts, which are abundantly supported by the evidence in this record, we are of the opinion that the contract between these parties was fair and equitable and should not be disturbed.

The judgment of the district court will therefore be reversed, and that court directed to enter judgment dismissing the action. The defendant in his answer does not ask for costs, and in view of the relations of the parties and the evident hardship which would result to plaintiff, if she should be required to pay the defendant's costs of this action, we have decided to allow no costs to either party. All concur.