G. E. STROMBERG, as Natural Guardian of Murray Stromberg, a Minor, Appellant, v. J. C. FRENCH, N. L. Smith and A. A. Wilson, E. E. Fletcher, R. O. Miller, Judd H. Kirkham and W. J. Murie, as Members of the Board of Education of Langdon Special School District, Respondents.

(236 N. W. 477.)

Opinion filed May 1, 1931.

*Snowfield & Stewart,* for appellant.

*E. E. Fletcher,* for respondents.

NUESSLE, J. This action was brought to restrain the defendants from enforcing the following rule adopted by the board of education of the city of Langdon, to wit: "Notice is hereby given that on and after September 29, 1930, any boy wearing metal heel plates on his shoes will be refused admittance to classes and will be suspended or expelled until the heel plates are removed."

The Board of Education of the city of Langdon is a special school district, organized pursuant to the provisions of article 9, chapter 12 (§§ 1229–1285, inclusive) Comp. Laws 1913. The defendants, French and Smith, are the principal and superintendent respectively of the

school conducted therein. The defendants, Wilson, Fletcher, Miller, Kirkham, and Murie, are the members of the board of education of said special school district. The plaintiff, G. E. Stromberg, is a resident in and a patron of the school district, and his minor son, Murray Stromberg, is a pupil in the high school maintained therein. On September 25, 1930, the rule above quoted was enacted. Murray Stromberg, at the direction of his father, G. E. Stromberg, wore metal heel plates. The plaintiff insisted that he had a right to do so and that the action of the Board of Education forbidding their use was unreasonable. The defendants threatened to enforce the rule. The plaintiff thereupon began the instant action to permanently enjoin them from doing so.

The case came to trial before the court without a jury. Evidence was offered in support of the contentions of the respective parties. The court held that the rule in question was a reasonable one and that the board of education had the right to make and enforce it, and accordingly ordered judgment in favor of the defendants. Plaintiff thereupon perfected the instant appeal.

The record discloses that at the beginning of the school year in September, 1930, some of the boys attending the Langdon High School were wearing shoes, on the heels of which metal plates were affixed. The principal and superintendent, believing that the use of these plates resulted in undue noise when their wearers walked through the halls and in the classrooms of the school and caused unreasonable damage to the floors of the school, requested the boys wearing them to discontinue their use. The boys complied with this request. Murray Stromberg was one of the boys who used heel plates. His mother noticed that he had removed the plates and directed him to replace them. He complied with his mother's direction and the school authorities objecting, sent him home until such time as he should remove the plates. Plaintiff was informed of this action of the principal and superintendent and at once interviewed them. He insisted that as a parent he had the right to determine what apparel his boy should wear at school; that therefore he had the right to direct Murray to wear heel plates, and that the action of the school authorities in forbidding their use was arbitrary and unreasonable, and he insisted that Murray be permitted to continue in school though he wore the forbidden heel plates.

Thereupon, on September 25, 1930, the school board enacted the rule first above quoted.

It appears that heel plates are quite commonly worn on the heels of shoes. The plaintiff offered evidence tending to show that their use prolongs the life of the heel appreciably. On the other hand, defendants offered evidence tending to show that their use was a fad rather than a matter of practical advantage. The floors of the Langdon High School are of hardwood, varnished and polished. The testimony of the defendants further tended to show that the use of these heel plates by boys in the high school caused undue noise when they were passing through the halls and that the floors were injured thereby more than they would be by ordinary leather or rubber heels. It further appears that a number of high school boys wore heel plates and that all were requested to discontinue their use for the above reasons. The trial court found, among other things:

"That such rule does not involve any element of oppression or humiliation to the pupils attending such high school, and that it imposes no affirmative duty upon such pupils, and that no more than a nominal consumption of time or expenditure of money is required to comply with it; and that in adopting said rule the members of said board of education acted wholly and entirely in good faith.

"That the floors of said high school building are made of hardwood, and that the wearing on their shoes of metal heel plates by the boys attending such high school was and is the direct cause of extraordinary and material damage to such floors, and was and is the direct cause of unusual and material expense to said special school district.

"That the wearing on their shoes of such metal heel plates by the boys attending such high school also caused an excessive and great amount of unnecessary and unusual noise and confusion in and about the high school building and both directly and indirectly tended to prevent, hinder and interfere with the discipline, government and instruction of the pupils attending such high school."

And the court held that the rule in question was a reasonable one and that the defendants had the right to make and enforce it.

The plaintiff on this appeal challenges the findings of the trial court as being not supported by the evidence. He contends that, in any event, the rule of which he complains is unreasonable and arbitrary

and that it infringes upon his parental right to determine what is reasonable and proper apparel for his son.

The plaintiff demands a trial de novo, so this court must view the record and find the facts for itself. Nevertheless, we must give some appreciable weight to the determination of the trial court, for that court had the advantage of seeing and hearing the witnesses and so was in a much better position to ascertain the real facts in the case than we are from the record alone. Doyle v. Doyle, 52 N. D. 380, 202 N. W. 860; Christianson v. Farmers' Warehouse Asso. 5 N. D. 438, 32 L.R.A. 730, 67 N. W. 300. We have carefully examined the record. Without further comment it is sufficient to say that we are of the opinion that the evidence amply sustains the findings as made by the trial court. Accordingly we adopt those findings.

The facts being thus established, the first question that presents itself is as to whether the board of education exceeded its authority in enacting the rule forbidding the wearing of metal heel plates.

The constitution of North Dakota, §§ 147, et seq., imposes upon the legislature the duty of making provision for the establishment and maintenance of a system of public schools. While imposing this duty the constitution places no restrictions upon the legislature as to its performance. "The legislature, therefore, has the power to enact any legislation in regard to the conduct, control, and regulation of the public free schools, which does not deny to the citizen the constitutional right to enjoy life and liberty, to pursue happiness and to acquire property." Flory v. Smith, 145 Va. 164, 48 A.L.R. 654, 134 S. E. 360. Pursuant to this constitutional mandate and authority the legislature made provision for the erection of special school districts and, among other provisions, enacted § 1251, Comp. Laws 1913, as follows:

"Each board of education shall have the power and it shall be its duty: . . .

"7. To have the custody of all school property of every kind and to see that the ordinances and by-laws of the city or village in relation thereto are observed. . . .

11. To adopt, alter and repeal, whenever it may deem expedient, rules and regulations for the reception, organization, grading, government and instruction of pupils, their suspension, expulsion or transfer

from one school to another. But no pupil shall be suspended or expelled except for insubordination, habitual indolence or disorderly conduct; such suspension shall not be for a longer period than ten days, nor such expulsion beyond the end of the current term of school. . . ."

Thus the legislature reposed a very broad discretion in boards of education with respect to the conduct and regulations of schools conducted by them.

The enactment of the defendant school board of which the plaintiff complains, is clearly aimed at the conservation of school property and the maintenance of good order and discipline in the school. As a general rule the decision of a school board, "if exercised in good faith on matters affecting the good order and discipline of the school, is final so far as it relates to the rights of pupils to enjoy school privileges, and the courts will not interfere with the exercise of such authority unless it has been illegally or unreasonably exercised." 35 Cyc. 1135. See also 24 R. C. L. 574, et seq. "The power of the board of education to control and manage the schools and to adopt rules and regulations necessary for that purpose is ample and full. The rules . . . necessary to a proper conduct and management of the schools are, and must necessarily be, left to the discretion of the board, and its acts will not be interfered with nor set aside by the courts, unless there is a clear abuse of the power and discretion conferred." Wilson v. Board of Education, 233 Ill. 464, 15 L.R.A.(N.S.) 1136, 84 N. E. 697, 13 Ann. Cas. 330; Christian v. Jones, 211 Ala. 161, 32 A.L.R. 1340, 100 So. 99. Presumptively, rules and regulations established by a school board are reasonable and proper. Kinzer v. Independent School Dist. (Kinzer v. Toms) 129 Iowa, 441, 3 L.R.A.(N.S.) 496, 105 N. W. 686, 6 Ann. Cas. 996; Christian v. Jones, supra. And whether or not such rules and regulations are reasonable is a question of law to be determined by the court. See Kinzer v. Independent School Dist. supra; Fertich v. Michener, 111 Ind. 472, 60 Am. Rep. 709, 11 N. E. 605, 14 N. E. 68.

The plaintiff contends that the right of a parent to educate, discipline and direct his children is paramount; that any rule or regulation which interferes with this right is unreasonable and must fall. So, in the

instant case, he insists he has the right to determine the character and kind of apparel that his son shall wear and that the rule of which he complains denies this right. Of course, in most instances, the right of the parent is paramount, but sometimes the interests of the public generally require that the parent shall give way. We think this is so in the instant case. The trial court found, and we think rightly, that under the circumstances there was no abuse of authority and the rule was proper and reasonable. Certainly there was no hardship or indignity imposed upon the plaintiff or his son by it. It is aimed at the remedying of a condition which the school authorities consider detrimental to the best conduct of the school. Plaintiff argues that if such a rule may be enforced, then other rules may be enacted and enforced and thus the school board enabled to prescribe absolutely the apparel that children must wear in order to enjoy the privileges of the school. But the plaintiff overlooks the safeguard of reasonableness which must always be considered.

Finally, plaintiff insists that the statute, § 1251, supra, expressly limits the power of the school board to expel or suspend to those cases where the pupil is insubordinate, habitually indolent, or guilty of disorderly conduct. The record discloses that Murray Stromberg was an excellent student. No exception could be taken to his conduct. He violated no rule imposed by the school authorities excepting that with respect to the wearing of metal heel plates, and then only because of parental direction. Clearly he was not indolent or disorderly. The plaintiff contends that he was not insubordinate within the meaning of that term as used in the statute. Whatever he did was done without malice or willful disregard of rules and only because of parental command. It seems to us that even so his conduct amounted to insubordination. Any other construction put upon the term as used in the statute might result in an intolerable situation. No rule or regulation could be enforced, provided the parent directed the pupil not to observe it. So we hold that the action of Murray, though taken at the command of his parents, constituted insubordination within the meaning of that term as used in the statute.

It follows then that since the rule of which the plaintiff complains was enacted by the school board in the proper exercise of its authority

and since, under the circumstances, this rule was reasonable, the plaintiff is not entitled to the relief which he seeks.

The judgment of the district court must be and it is affirmed.

CHRISTIANSON, Ch. J., and BIRDZELL, BURR and BURKE, JJ., concur.